***********
At Full Commission oral argument of this matter, Plaintiff made a motion to reopen the evidentiary record for the taking of additional evidence in the form of deposition testimony of Dr. Ronald Demas. Plaintiff's motion is hereby DENIED.
 ***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with minor modifications of the findings of fact.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged contracting of the occupational disease, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The Employer-Employee relationship existed between Plaintiff and Defendant-Employer.
3. Royal SunAlliance was the carrier on the risk.
4. Plaintiff's average weekly wage is $396.54.
5. Plaintiff's injury which is the subject of this claim is bilateral carpal tunnel syndrome.
6. Plaintiff was out of work from October 17, 1998 through January 17, 1999 and from December 11, 1999 through January 5, 2000. Plaintiff went back out of work on August 16, 2000 and has not returned to work for Defendant-Employer since that date.
7. A videotape designated and labeled as Defendants' Exhibit 1 is authentic and is made a part of the record.
8. The depositions of Dr. Kathryn Caulfield and Dr. Ronald Demas are a part of the evidentiary record in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff, sixty-one (61) years old at the time of the deputy commissioner hearing, is a right-handed male who was employed by Defendant-Employer for approximately thirty-eight (38) years. Plaintiff worked in the winding department of the Flint Plant in Gastonia most of his career with Defendant-Employer and performed various jobs and duties over the years. Plaintiff worked as a sweeper in the spinning room, a yarn service person in the spooling department, and a packer. Plaintiff also fixed conveyer belts, performed color control, and worked on other yarn service jobs.
2. Plaintiff first experienced problems in the form of numbness, tingling and pain in his right ring finger, then his right hand, and eventually his left hand, in early 1995 while performing a yarn hauler/checker job. Plaintiff's job as a yarn hauler/checker primarily involved putting empty cones on winders and then removing full cones of yarn from the winders. When removing the full cones of yarn from the winders, Plaintiff would grab a cone with his left hand, mark it with a piece of chalk using his right hand, and then place the yarn in a doff box. Plaintiff would remove an average of fifty to sixty full cones from the winder, mark them and place them in a doff box, and then push that box away from the winder. He would push the doff box approximately forty to fifty feet from the winder, retrieve an empty doff box, and then repeat the process on another winder. Plaintiff was also required to obtain empty cones from a cardboard box and place them on the spindles on the winders, as needed. In addition to placing empty cones on the winders and removing from the winders and marking with chalk the full cones of yarn, Plaintiff also was required to sweep around his machines and blow off those machines with an air hose. Plaintiff would spend approximately forty (40) minutes per shift in a smoking booth, where he could sit and observe the winders.
3. Plaintiff viewed the videotape that was received into evidence as Defendants' Exhibit 1, which depicts an individual who is performing the job of a yarn hauler/checker. The manner in which that individual was performing that job accurately depicts the manner in which Plaintiff performed the same job.
4. Plaintiff was initially treated by Dr. Janet Aiken, his family physician, for the problems with his right ring finger and hands. Dr. Aiken ordered a nerve conduction study and then referred Plaintiff to Dr. Harry Caulfield. Dr. Harry Caulfield examined Plaintiff on June 3 and 15, 1998, and then referred Plaintiff to Dr. Kathryn Caulfield for further treatment.
5. On June 17, 1998, Dr. Kathryn Caulfield examined Plaintiff whose complaints included numbness and tingling in the radial aspect of his right ring finger, numbness and tingling and a tired feeling in his right hand and right wrist pain, and some numbness and tingling and mild weakness of the left hand. Dr. Caulfield ordered a repeat nerve conduction study and subsequently diagnosed Plaintiff with bilateral carpal tunnel syndrome and right dorsal wrist syndrome. Dr. Caulfield performed a right carpal tunnel release and a right dorsal wrist exploration on October 19, 1998, and a left carpal tunnel release on November 16, 1998. Dr. Caulfield subsequently diagnosed Plaintiff with left thumb stenosing tenosynovitis on August 4, 1999, and performed a left thumb A-1 pulley release on December 13, 1999. Plaintiff did not report any further problems with his left thumb, and Dr. Caulfield rendered no specific treatment for any carpal tunnel-related problems after performing the bilateral carpal tunnel releases.
6. Dr. Caulfield viewed Defendants' Exhibit 1, the videotape of Plaintiff's yarn hauler/checker job. In a letter to Defendant-Carrier dated September 2, 1998, Dr. Caulfield opined that she did not believe that Plaintiff's "carpal tunnel syndrome or wrist injury in any way could be related to the job that I watched on the video." Dr. Caulfield testified that, in her opinion and to a reasonable degree of medical certainty, the yarn hauler/checker job was not "particularly repetitive for the hands," and did not cause or contribute to Plaintiff's carpal tunnel syndrome.
7. Plaintiff was seen by Dr. Ronald Demas, a board-certified neurologist, on September 1, 2000, upon referral by his attorney. This is the only time Plaintiff was seen by Dr. Demas. Dr. Demas did not review the videotape of Plaintiff's job activities. Dr. Demas did not testify that Plaintiff's job placed him at an increased risk of contracting bilateral carpal tunnel syndrome as compared to the general population not so employed. The Full Commission gives greater weight to the testimony of Dr. Caulfield, Plaintiff's treating physician.
8. Plaintiff testified at hearing that he contracted Type II diabetes in 1998.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that his bilateral carpal tunnel syndrome was due to causes and conditions which are characteristic of and peculiar to his job with Defendant-Employer, that because of his job he was at an increased risk of contracting said disease, or that his job duties caused or significantly contributed to his bilateral carpal tunnel syndrome. N.C.G.S. § 97-53(13).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim under the law must be and is hereby DENIED.
2. Each side shall bear its own costs, except the Defendants shall pay an expert witness fee in the amount of $325.00 to Dr. Kathryn Caulfield if they have not already done so.
This the ___ day of February 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENEE C. RIGGSBEE COMMISSIONER